## THE STATE v. JOHN H. JACKSON, Appellant.

Division Two, June 4, 1920.

1. **CARRYING CONCEALED WEAPON: Information.** The information, charging defendant with the crime of carrying a concealed weapon, is set out in the statement, and *held* to be sufficient in form.

2. ———: **Verdict.** Likewise is the verdict, finding defendant guilty in manner and form as charged in the information and assessing his punishment at a fine of $250, *held* sufficient in form.

3. ———: **Substantial Evidence.** The evidence of defendant's guilt being substantial, it is the province of the jury to pass upon the facts, under proper instructions.

4. ———: **Instructions: General Assignment.** A general assignment in the motion for a new trial in a criminal case that "the verdict is against the law as declared in the instructions given by the court" is too indefinite to require consideration on appeal.

5. ———: **Demurrer to Evidence: Waiver.** It is the duty of the jury to determine the issues under all the evidence in the case; and where defendant puts in his own evidence, he waives his contention that the trial court erred in overruling his demurrer to the evidence presented at the close of the State's case.

6. ———: **Postmaster.** The fact that defendant was postmaster and carried the Government's money and stamps upon his person for safekeeping did not excuse him for carrying a pistol intentionally concealed, under Section 4496, Revised Statutes 1909; and whether he intentionally carried the pistol concealed, was a question for the jury.

7. ———: **Intention.** The intention of the defendant in carrying a weapon concealed is not affected by the fact that he was under bond as postmaster; and the court does not commit harmful error in orally announcing that testimony that defendant was under bond is not competent to establish his intention.

8. **REMARKS OF COUNSEL: Trivial Interruptions.** Remarks of the prosecuting attorney based upon testimony, or arguments and opinions drawn from the testimony, are not prejudicial error; and while improper remarks, calculated to prejudice the jury against a defendant charged with crime, should not be allowed, trivial interruptions of the prosecuting attorney, made for the purpose of breaking the force of his argument to the jury, should not be tolerated.

Appeal from Gasconade Circuit Court.—*Hon. R. A. Breuer,* Judge.

AFFIRMED.

*Frank W. McAllister,* Attorney-General, and *H. P. Ragland* for respondent.

(1) The information contains every necessary allegation and is in accordance with approved precedents. Sec. 4496, R. S. 1909; Kelley's Criminal Law and Practice, sec. 588, p. 517; State v. Athanas, 150 Mo. App. 588; State v. Smith, 24 Mo. App. 413. (2) The verdict is sufficient. A general verdict finding the defendant guilty as charged in the information, when the information is not duplicitious, is good. State v. Richardson, 248 Mo. 575; State v. Margin, 230 Mo. 692; State v. Stark, 202 Mo. 221. (3) The assignments that the verdict is "against the evidence" and "against the law" are insufficient and are not entitled to consideration by this court. State v. Oran Mann, 217 S. W. 69; State v. Rowe and Sanders, 271 Mo. 94; State v. Selleck, 199 S. W. 130; State v. McBrien, 265 Mo. 604; State v. Scott, 214 Mo. 261; Sec. 1841, R. S. 1909. (4) The defendant put before the jury his own testimony after his demurrer to the State's evidence had been overruled. In so doing he waived his right to be heard in this court on that subject. State v. Mann, 217

S. W. 69; State v. Martin, 230 Mo. 700; State v. Lackey, 230 Mo. 713; State v. Gow, 235 Mo. 329; State v. Cummings, 248 Mo. 518; State v. Selleck, 199 S. W. 130; Riley v. O'Kelley, 250 Mo. 660. (5) Instruction 4, of which appellant complains, is sufficient in form and substance. Sec. 4496, R. S. 1909. Where a person carries a deadly weapon concealed about his person with the intent to conceal it, it does not matter what his purpose or how harmless his motive in carrying it, provided his carrying it does not come within the exceptions of the statute. State v. Hovis, 135 Mo. App. 544; State v. Carter, 259 Mo. 359. (6) The remarks of the court do not constitute error. 16 C. J. sec. 2093, p. 828; 16 C. J. sec. 2101, p. 831; State v. Clinkenbeard, 185 S. W. 544; State v. Hovis, 135 Mo. App. 544. (7) It is within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inference which may be drawn from the facts in evidence. 16 C. J. sec. 2240, p. 896; State v. Farrell, 246 Mo. 335; State v. Pipkin, 221 Mo. 453; State v. Sublett, 191 Mo. 174.

RAILEY, C.—On July 14, 1919, the prosecuting attorney of Gasconade County, Missouri, filed in the circuit court of said county, a verified information charging defendant with the crime of carrying a concealed weapon. The information, without caption and jurat, is as follows:

"J. W. Hensley, prosecuting attorney within and for the County of Gasconade, in the State of Missouri, informs the court upon the sworn complaint of Fred Bodendick that, on the 29th day of May, 1919, at and in the County of Gasconade, in the State of Missouri, John H. Jackson, not being then and there a legally qualified sheriff, police officer or other person whose bona-fide duty it was to execute process, civil or criminal, make arrests or aid in conserving the public peace; and not being then and there traveling in a continuous journey peaceably through the State of Missouri, did unlawfully and feloniously carry concealed about his person a certain deadly

and dangerous weapon, to-wit: a revolving pistol; against the peace and dignity of the State.

"J. W. HENSLEY,
                  "Prosecuting attorney of Gasconade
                  "County, Missouri."

On September 8, 1919, defendant was properly arraigned and entered his plea of not guilty.

The evidence, on the part of the State, tends to show that on the evening of May 29, 1919, Fred Bodendick, prosecuting witness in this case, arriving in Bland, Gasconade County, this State, from Hermann, also in this State, went directly to the light plant and garage to see one Coonie Miller, relative to a trip back to Hermann next day. Upon arriving at the light plant and garage, he saw the defendant, John H. Jackson, in the act of filling one of the tires of his car which he had there, with air. Defendant finished, put on his coat and walked around to the back of the car, met Bodendick, who said to him, "You have been running over the family and probably you want to run over me," whereupon he struck defendant, and defendant ran his hand in his right outside pocket. Bodendick, seeing this action, took hold of defendant and they scuffled until, Bodendick says, defendant said he had enough. During this altercation, Bodendick did not see defendant with a pistol, nor did he know that he had one, although while they were scuffling he felt something in defendant's pocket. After the scuffle, they both walked back toward the car and, at this time, defendant reached down and picked something from the ground Bodendick saw that defendant had a gun or pistol, and attempted to "grab" his hand. Defendant fired, and Bodendick turned and ran; defendant followed, discharging the pistol five times, firing each shot in Bodendick's direction. The first went through his "pants" and one of the others through his "shirt." It appears that defendant was the postmaster at Bland, and Bodendick's wife had told him that defendant had ejected his (the witness's) daughter twice from the postoffice. One witness testified that defendant was not a sheriff, constable,

police officer or any officer authorized to execute process or make a criminal arrest, and several other witnesses who were present and saw the encounter testified that they did not at any time see a gun or pistol until after defendant had picked one up from the ground, and their testimony as to the other incidents are substantially as outlined above.

At the conclusion of respondent's evidence in chief, the defendant asked, and the court refused, the following instruction:

"The court instructs the jury that under the law and the evidence in this case, you should find the defendant not guilty."

An exception was saved to this ruling.

The evidence on the part of the defendant tends to show that he was the postmaster at Bland and, on the evening of the 29th of May, 1919, he closed the postoffice about seven o'clock, and, not having a safe in the office, he placed the money, stamps and money orders in his pocket to take home for safe-keeping, as it was his custom to do. He also placed in his right-hand outside coat pocket, his pistol, and, as he states, the lapel of the pocket of his coat was turned in, and the pistol not concealed. He had recently bought an automobile from Mr. Neese, the cashier of the Commercial Bank, and had made an appointment with him to test the car out, to ascertain whether or not it was in good running condition. The defendant was intending to make a trip to New Salem the next day. After the ride, and after Mr. Neese had left him, he went to the garage to fill one of the tires of the car with air, intending to leave immediately for his home. After filling the tire, he put on his coat and noticed the butt of the pistol protruding from his pocket. After putting on his coat, and after he started to get into the car, he noticed the valve cap of the air-stem on the ground, and stooped to put it on. While doing this, he heard Bodendick, or some one else, say something, turned his head and saw that it was Bodendick, who immediately kicked him while he was still in this position. He grabbed

Bodendick by the leg and was "slung" loose and kicked in the ribs twice more. Defendant again "grabbed" Bodendick's leg and they both fell in a nearby ditch, and as they crawled out, Bodendick, being somewhat ahead of defendant, started to pick up something, and, as defendant said, made some threatening remark, just what it was he did not know. At this time, he saw his gun on the ground, picked it up, and as Bodendick "grabbed" him again fired at him and continued to do so five times. Defendant says that he does not know how the gun came to be on the ground.

After the shooting, defendant surrendered to a deputy sheriff and was released on bond. The instructions and such other matters as may be deemed important, will be considered in the opinion. The case was tried on September 8, 1919, before a jury, and the latter returned into court the following verdict:

"We, the jury, find the defendant guilty, in manner and form, as charged in the information, and assess his punishment at a fine of $250.

"GEO. RUEDIGER, Foreman."

On September 10, 1919, the court pronounced judgment and sentence upon defendant in conformity with the terms of the verdict. Defendant, in due time, filed his motion for a new trial, which was overruled, and the cause appealed by him to this court.

I. The information heretofore set out is sufficient in form and is in accordance with approved precedents. [Sec. 4496, R. S. 1909; State v. Athanas, 150 Mo. App.

Information.     588; State v. Smith, 24 Mo. App. 413; Kelley's Crim. Law & Practice, sec. 588, p. 517; State v. Carter, 259 Mo. 1. c. 360; State v. Barton, 209 S. W. 888-9.]

II. The jury found defendant guilty as charged in the information and assessed his punishment at a fine

Verdict.     of $250. The verdict was sufficient in form. [State v. Richardson, 248 Mo. 1. c. 575-6; State v. Elvins, 101 Mo. 243; State v. Berning, 91 Mo. 82-5.]

III. Defendant, in his motion for a new trial, assigns the following errors:

"1. The verdict is against the evidence.

"2. The verdict is against the law as declared in the instructions given by the court."

There was substantial evidence offered at the trial to sustain the verdict against defendant. It was the province of the jury to pass upon the facts under the instructions of the court. Aside from the foregoing, we have uniformly held that such general assignments are too indefinite to require at our hands further consideration of same. [State v. Mann, 217 S. W. l. c. 69; State v. Rowe and Sanders, 271 Mo. l. c. 94, 196 S. W. 7; State v. Selleck, 199 S. W. l. c. 130-1; State v. McBrien, 265 Mo. l. c. 604-5, 178 S. W. 489; State v. Sydnor, 253 Mo. l. c. 380, 161 S. W. 692; State v. Scott, 214 Mo. l. c. 261, 113 S. W. 1069; State v. Espenchied, 212 Mo. l. c. 222-3, 110 S. W. 1072; Sec. 1841, R. S. 1909.]

*Instructions.*

IV. Appellant, in his third assignment, contends that the trial court committed error in overruling his demurrer to the evidence at the conclusion of the State's evidence in chief. The defendant, having put before the jury his own evidence, and rebuttal testimony having been introduced, he waived his right to be heard on the original demurrer, as it became the duty of the jury to determine the issues under *all* the evidence in the cause. The ruling, in respect to above matter, has become elementary law in this State, as shown by the following authorities: State v. Mann, 217 S. W. 69; Lareau v. Lareau, 208 S. W. l. c. 243; State v. Selleck, 199 S. W. l. c. 130; Riley v. O'Kelly, 250 Mo. l. c. 660; State v. Cummings, 248 Mo. l. c. 518; State v. Gow, 235 Mo. l. c. 329; State v. Lackey, 230 Mo. l. c. 713; State v. Martin, 230 Mo. l. c. 700; Riggs v. Railroad, 216 Mo. l. c. 310; Hilz v. Ry. Co., 101 Mo. 42; McPherson v. Ry. Co., 97 Mo. 255; Guenther v. Ry. Co., 95 Mo. l. c. 289; Bowen v. Ry. Co., 95 Mo. l. c. 275-6.

*Demurrer to Evidence.*

(a) There is nothing in the record before us which indicates that defendant filed a demurrer to the evidence at the conclusion of the *whole* case, but even if one had been filed, the trial court would have been justified in overruling same, as there was substantial evidence offered at the trial sustaining the verdict of the jury.

V. Appellant's fourth assignment, reads as follows:
"4. Because the court' erred in giving instruction No. four, as asked by the State."

Said instruction four, is couched in the following language:

"The court instructs the jury that the fact that the defendant was postmaster or had money or stamps upon

Postmaster.

or about his person is not of itself a defense to this action and does not authorize or excuse him for carrying the pistol concealed, if you find he did so intentionally carry it concealed."

This assignment is conclusively settled adversely to the contention of appellant, in State v. Carter, 259 Mo. l. c. 360, where we said, in construing Section 4496, Revised Statutes 1909;

"The court did not err in refusing to allow the defendant to prove that he had been threatened with great bodily harm or had good reason to carry the weapon in the necessary defense of his person. The above were proper defenses under Section 1863, Revised Statutes 1899. But that section was repealed in 1909 and a new section (Sec. 4496, R. S. 1909) was enacted in lieu thereof. [Laws 1909, p. 452.] Those defenses are not available to the defendant charged with carrying concealed weapons under the new act."

To the same effect is State v. Reagan, 217 S. W. 84-5.

It was a question for the jury as to whether defendant intentionally carried his pistol concealed. If he did so, then the fact that he was postmaster, or had money or stamps upon or about his person, did not excuse him for violating the plain provisions of Section 4496 supra.

It is evident, that the lawmakers of this State, in the enactment of Section 4496, were attempting to put a stop to the carrying of firearms, except in respect to those cases where the persons in charge thereof were authorized by said section to carry same. The foregoing contention of appellant is accordingly overruled.

VI. The fifth assignment reads as follows:

"5. Because the court 'erred in admitting incompetent, illegal and irrelevant testimony offered by the **Incompetent** State over the objections and exceptions of **Evidence.** the defendant."

No brief has been filed by appellant and the general objection supra does not point out to us any specific objectionable evidence, alleged to have been offered by the State. We have, however, read the record carefully, in passing upon the questions involved, and do not find any adverse rulings of the court, in respect to above matters, of which the defendant can have any legal grounds of complaint.

VII. In his sixth assignment of error, appellant asks for a reversal of the cause: "Because the court erred in making the following prejudicial statement in the presence and hearing of the jury." The matters **Remarks.** complained of under this caption, occurred as **of Court.** follows:

"Q. By Mr. BAXTER to Defendant: I will ask you if you are under bond to protect the funds of the United States Government in the postoffice?

"Mr. HENSLEY: I object to that; that is not material.

"The COURT: It don't give him authority to carry a pistol.

"Mr. BAXTER: We are offering the evidence to show the intention of the defendant as to whether or not he intended to carry this pistol concealed.

"The COURT: The law says he shall not carry it concealed except on certain conditions and the intention don't make any difference.

"Mr. BAXTER: If the court please, the intention is the primary feature in this case—as to whether or not this defendant intended to carry this pistol concealed.

"The COURT: The law says under what conditions a man may carry a pistol concealed, and when he carried it under any other conditions concealed, the intention don't cut any figure.

"(To which ruling of the Court the defendant by his counsel then and there duly excepted and still excepts).

"Which said error was not cured by the court later giving Instruction D. offered by defendant."

The court was clearly within the law in making the above statements. [State v. Carter, 259 Mo. l. c. 360.] The first question, above quoted, clearly indicated that defendant's counsel was attempting to show that his client ought to be excused for carrying a concealed weapon, if he was under bond to protect the funds of the United States Government. The court not only ruled correctly, in respect to above matter, but at the instance of defendant, gave the jury Instruction D, which reads as follows:

"The court instructs the jury that to conceal a weapon means something more than carrying it or the mere fact of having it where it may not be seen. It implies an assent of the mind and a purpose to carry it so that it may not be seen; and the court instructs you that if you find and believe from the evidence that the defendant John Jackson, did not intend to carry the pistol mentioned and described in the information herein concealed, then you should find the defendant not guilty."

This assignment is without merit and is overruled.

VIII. In appellant's seventh assignment of error, it is claimed that counsel for the State was permitted to indulge in improper statements in his argument to the jury. The following occurred:

Argument to Jury.

"Mr. MONROE (Attorney for State): The prosecuting witness says that during the scuffle something fell on the ground—

"Mr. Baxter (interrupting): There is no evidence on the part of the prosecuting witness, and he did not testify, that anything fell on the ground.

"The Court: That is a mere matter of argument; go ahead."

Turning to the transcript of the evidence, we find that defendant's counsel had the prosecuting witness testify as follows:

"Q. Now, you say the first time you saw this pistol was when Mr. Jackson had stooped and picked it up off of the ground?

"A. He picked something off of the ground and the first I seen it was in his hand. . . .

"Q. You don't know where that pistol came from that Mr. Jackson picked off of the ground? A. No, sir."

In view of the foregoing, we are of the opinion that the interruption of respondent's counsel was without merit, and properly overruled.

Complaint is also made as to the remark of respondent's counsel to the effect that, when Jackson tried to get that pistol out, he tore his pocket. The prosecuting witness said defendant ran his hand in the pocket of his coat. He further testified:

"Q. Well, what was the condition of the pocket after he did this? A. The lining was torn wrong side out, it looked like about half way, and his coat was tore down the side a little ways."

In view of the foregoing, counsel for respondent was simply giving it as his opinion, that Jackson tore the pocket out in getting the pistol. It was the province of the jury to determine the facts, and no harm was done in overruling the above objection.

Other remarks of the State's counsel were objected to, but we find there was no merit in the objections thus made. While it is the duty of the trial court to protect a defendant charged with crime, from improper remarks, calculated to prejudice the jury against him, yet, on the other hand, trivial interruptions of the prosecuting attor-

ney, made for the purpose of breaking the force of his remarks to the jury, should not be tolerated.

The issue in this case, was whether the defendant was carrying a concealed weapon, in violation of law. The facts were put before the jury without prejudice, and there is no merit in any of the objections above referred to in the motion for a new trial.

IX. The defendant had a fair and impartial trial upon proper instructions given by the court. He was convicted upon substantial evidence and we find no grounds for disturbing the verdict of the jury.

The judgment below is accordingly affirmed. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.