STATE of Missouri,
Plaintiff-Respondent,

v.

Johnnie Lee HENDERSON,
Respondent-Appellant.

No. 46401.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 11, 1983.

Motion For Rehearing and/or Transfer to
Supreme Court Denied Nov. 15, 1983.

Application to Transfer Denied
Dec. 20, 1983.

Charles M. Shaw, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., St. Louis County, Clayton, for plaintiff-respondent.

REINHARD, Presiding Judge.

Defendant, the mayor of Wellston, Missouri, was convicted of carrying a concealed weapon, a violation of § 571.115, RSMo 1978,[1] and was sentenced to serve a term of fifty days in the county jail. The trial court suspended execution of the sentence and placed defendant on two years probation. He appeals. We affirm.

On January 2, 1981, at approximately 7:00 p.m., the defendant was stopped in the city of Woodson Terrace by a police officer while he and the city treasurer of Wellston were returning from Jefferson City where they had gone to retrieve a city owned car and to see a state legislator. Defendant was placed under arrest for careless and imprudent driving and suspicion of driving while intoxicated.

A search of defendant at the police station disclosed a loaded Colt .38 caliber revolver in a holster under his vest. The weapon was owned by the Wellston Police Department and had been issued to the defendant. Defendant testified he carried the weapon while engaged in his duties as mayor, but for "no other purpose" than self-protection. He testified that he had "been threatened any number of times. . . . I have to take care of myself out there and sometimes it gets pretty rough." Defendant stated that the city attorney had advised him that as mayor he could carry the weapon concealed on his person within the Wellston city limits, but defendant acknowledged that he was unable to obtain a legal opinion that he could carry the weapon in that manner outside the city.

Section 571.115 provides:

> If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, . . . he shall, upon conviction, be punished by imprisonment by the division of corrections for not more than five years, or by imprisonment in the county jail not less than fifty days nor more than one year, but nothing contained in this section shall apply to legally qualified sheriffs, police officers and other persons whose bona fide duty is to execute process, civil or criminal, make arrests, or aid in conserving the public peace. . . .

Defendant asserted that as mayor of Wellston, a third class city, he was a member of the class entitled to the immunity of

---

1. All citations are to RSMo 1978 unless otherwise indicated.

§ 571.115 and this immunity also protected him when he was beyond the city limits of Wellston. On appeal, defendant's principal contention is that Instruction No. 6 which submitted this issue to the jury was erroneous. The state argues, though, that the mayor was not a legally qualified sheriff, police officer or person who had a bona fide duty to execute civil or criminal process, make arrests or aid in conserving the peace and thus was not entitled to the immunity under any circumstances.

Our research has disclosed no Missouri case law resolving the issue of whether a mayor is entitled to the exemption. Cases have held that neither a postmaster, *State v. Jackson,* 283 Mo. 18, 222 S.W. 746 (1920), nor a chief deputy state beverage inspector, *State v. Hogan,* 273 S.W. 1060 (Mo.1925), are entitled to the exemption. Defendant makes no claim that he is a legally qualified sheriff or police officer. He asserts, though, that he did have a bona fide duty to "aid in conserving the peace" by virtue of §§ 77.250, 77.350 and 85.561.

Section 77.250 provides that the "mayor of a third class city has superintending control of all the officers and affairs of the city and shall take care that the ordinances of the city and the state laws relating to such city are complied with." Section 77.350 provides that the "mayor shall be active and vigilant in enforcing all laws and ordinances for the government of the city . . . and he is hereby authorized to call on every male inhabitant of the city . . . to aid in enforcing the laws." Section 85.561 provides that "[i]n all third class cities . . . [t]he chief of police shall, in the discharge of his duties, be subject to the orders of the mayor only; the deputy chief of police and all other members of the police department shall be subject to the orders of their superiors in the police department and the mayor only."

In addition, defendant testified he was a "conservator of the peace." The title "conservator of the peace" has been conferred upon certain officers expressly by law. They include, for example, the governor, Mo. Const. Art. 4, § 2; members of the state militia, § 41.690; coroner, § 58.180; sheriff, § 57.110 and marshal, § 85.620. The duties of a conservator of the peace are not defined by statute, but at common law a conservator of the peace was a peace officer whose duties "were to prevent and arrest for breaches of the peace in their presence, but not to arraign and try the offender." *Ex parte Levy,* 204 Ark. 657, 163 S.W.2d 529, 532 (1942). *See Marcuchi v. Norfolk & W. Ry. Co.,* 81 W.Va. 548, 94 S.E. 979, 980 (1918); *State v. Shockley,* 29 Utah 25, 80 P. 865, 867–68 (1905); *In re Barker,* 56 Vt. 14, 20 (1884). Thus, a conservator of the peace would be entitled to the exemption of § 571.115 both as a person who had a bona fide duty to make arrests and aid in conserving the peace.

A mayor of a third class city was entitled to the immunity of § 571.115 if he was either designated a conservator of the peace by law or had a bona fide duty to aid in conserving the peace. Our review of the legislative history of the statutes relating to the mayor's duties leads us to the conclusion that in January, 1981, a mayor of a third class city was not a conservator of the peace but did have a bona fide duty to aid in conserving the peace.

Before January 1, 1979, the mayor of every municipality in the State of Missouri was a conservator of the peace by virtue of Section 542.150, RSMo. 1969, which provided:

If twelve or more persons, armed with clubs, stones or other dangerous weapons, or if any number of armed or unarmed persons exceeding twenty, shall unlawfully, riotously assemble in any city or town within this state, *it shall be the duty of the mayor* and each member of the board of aldermen, and each member of the board of delegates or other legislative council of such municipality . . . and of each magistrate including every person who is by virtue of his office a conservator of the peace of the state, to go among such persons so assembled, or as near to them as may be consistent with safety, and to command all such persons so assembled to disperse immediately and re-

pair to their respective places of business or abode, and if such command be not forthwith obeyed, *to proceed to arrest all persons* so refusing or failing to obey such command, and to command all bystanders or spectators to aid and assist in making such arrests.[2] (emphasis added)

In *State v. Davis,* 284 Mo. 695, 225 S.W. 707, 710 (1920), the Supreme Court stated that a justice of the peace was a "conserver of the peace" by virtue of § 4686, RSMo. 1909, (the predecessor statute to § 542.150, RSMo. 1969) and entitled to the exemption in the concealed weapon statute. In addition, the mayors of first class cities, mayors of second class cities, mayors of fourth class cities and the chairman of the board of all villages and towns were expressly designated as conservators of the peace. *See* § 85.230, § 85.340; § 80.260 and 98.510, RSMo. 1969.

In addition to being a conservator of the peace, a mayor of a third class city, before January 2, 1979, had the power to arrest without a warrant within the city any person who committed an offense in his pres-

ence by virtue of § 98.360 and § 542.020, RSMo. 1969.[3]

However, this statutory scheme was significantly altered by enactment of the new Criminal Code, Laws 1977, p. 658, and the Court Reform and Revision Act, Laws 1978, p. 696. After January 1, 1979, only the mayor of a first class city is a conservator of the peace and has the power of arrest. *See* § 85.230. Sections 98.360, 98.510 and 80.260 were repealed as part of the Court Reform Act, effective January 2, 1979. Section 85.340 relating to second class mayors had been repealed in 1975.

Section 479.110 was enacted in lieu of § 98.360, effective January 2, 1979. It now provides "the city marshal, chief of police, or other police officer of any municipality shall, without a warrant, make arrests of any person who commits an offense in his presence...." The reference to an "officer ... whose duty ... it is to ... preserve the peace and dignity of the city" has been removed. In addition, § 542.020 was amended by Laws 1978, p. 964, effective January 2, 1979, deleting the reference to

2. This statute had its origin in the Territorial Legislature's Act of October 1, 1804. *See* 1 Terr.Laws, p. 17, § 10. The mayor was not named in the original statute, but has been named since 1865. See general statutes 1865 p. 811, § 10. In addition, § 542.170 RSMo. 1969 provided:

If the persons assembled, as indicated herein, shall fail to disperse without unnecessary delay, the following magistrates shall each, in the order in which they are herein named, have power and authority to require the aid of a sufficient number of persons in arms or otherwise, and to proceed as they may deem expedient, and to repress and disperse such riotous assemblage and arrest offenders. That is to say, the duty of requiring the aid of such force and directing its employment shall devolve, in the first instance, *on the mayor of the town* or city in which such assemblage occurs, and if he be not present or be unable to act, then on the judge of any court of record, except a probate judge, the sheriff, the marshal, the coroner, or police justice. In case of the absence of any of the officers mentioned in this section, the officers named after him therein shall have all the power and authority which such absentee would have had if present. (emphasis added)

3. Section 98.360 RSMo. 1969 provided that in a third class city:

the marshal, night police *or other officer of said city, whose duty it is to* make arrests or *preserve the peace and dignity of the city,* shall make arrests of any person who commits an offense in their presence without a warrant, but such officer shall, before the trial, file a written complaint, as herein provided. (emphasis added)

The mayor was made an officer whose duty it was to preserve the public peace by § 542.020, RSMo. 1969. It provided:

*The following officers shall have power and jurisdiction to cause to be kept all laws made for the preservation of the public peace, to issue process for the apprehension of persons charged with criminal offenses,* and hold them to bail; require persons to give security to keep the peace, and to execute the powers and duties herein conferred in relation thereto: The judges of the supreme court throughout the state; judges of the courts of record, except probate judges, within their respective jurisdictions; clerks and deputy clerks of magistrate courts within their respective counties; *the mayors* and police judges *of incorporated cities* and towns *within the limits of their respective corporations;* (emphasis added)

the mayor as an officer charged with preserving the public peace. It now provides:

The following officers shall have power and jurisdiction to cause to be kept all laws made for the preservation of the public peace, to issue process for the apprehension of persons charged with criminal offenses and hold them to bail; require persons to give security to keep the peace, and to execute the powers and duties herein conferred in relation thereto: The judges of the supreme court throughout the state; judges of the court of appeals and circuit judges within their respective districts and circuits; associate circuit judges within their respective counties; municipal judges within the limits of their respective municipalities....

Section 542.150 RSMo. 1969 was repealed as part of the new criminal code, effective January 1, 1979. However § 542.170 was not repealed, but was amended effective January 2, 1979 to provide:

If the persons assembled, as indicated herein, shall fail to disperse without unnecessary delay, the following magistrates shall each, in the order in which they are herein named, have power and authority to require the aid of a sufficient number of persons in arms or otherwise, and to proceed as they may deem expedient, and to repress and disperse such riotous assemblage and arrest offenders. That is to say, the duty of requiring the aid of such force and directing its employment shall devolve, in the first instance, on the *mayor of the town or city in which such assemblage occurs* and if he be not present or be unable to act, then on the judge of any court of record, the sheriff, the marshall, or the coroner. In case of the absence of any of the officers mentioned in this section, the officers named after him herein shall have all the power and authority which such absentee would have had if present. (emphasis added)

■ There are several difficulties in determining the meaning of this statute. First, it designates the mayor as a "magistrate." However, § 542.010 and § 542.020 were amended, effective January 2, 1979 eliminating the mayor as one of the officials designated a "magistrate." Second, the statute refers to a "riotous assemblage" and connotes the mayor has the power of arrest. However, § 542.150 which defined "riotous assemblage" and which *expressly* gave the power of arrest to the mayor was repealed. We note that the title of the statute is "What officers may require aid of persons to dispose rioters." Since the title of an act is essentially a part of the act and is itself a legislative expression of the general scope of the bill, it is proper to consider it in arriving at the intent of the legislature. *In re Tompkins' Estate,* 341 S.W.2d 866, 871 (Mo.1960).

■ We have concluded that the intent of the legislature was to remove the power of arrest from the mayor during a riot, but to authorize him in the first instance with the discretion to deputize bystanders to make arrests and to make decisions as to the method and manner of restoring order. *See U.S. v. Faneca,* 332 F.2d 872, 874 (5th Cir.1964); *Smith v. U.S.,* 330 F.Supp. 867 (E.D.Mich.1971).

■ The mayor of a third class city pursuant to §§ 77.250, 77.350, and 85.561 still retains his duty as superintendent of the affairs and officers of the city to be active and vigilant in enforcing the laws in the municipality of which he is mayor. The mayor's duties under these statutes as well as his duty under § 542.170 to restore order during a riot constitutes a bona fide duty to aid in conserving the peace,[4] even though

4. The phrase "aids in conserving the peace" was removed when § 571.115 was repealed and a new statute, § 571.030, RSMo. Supp.1982, effective in August, 1981, enacted. It now provides:

A person commits the crime of unlawful use of weapons if he knowingly:

(1) Carries concealed upon or about his person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use;
. . .
2. Subdivisions (1), (3), (4), (6), (7) and (8) of subsection 1 of this section shall not apply to or affect any of the following:

he is no longer a "conservator of the peace" nor has the power of arrest.

This brings us squarely to defendant's principal contention that Instruction No. 6 misstated the law. Instruction No. 6 provided:

One of the issues in this case is whether the defendant was lawfully entitled to carry a concealed weapon. If you find and believe beyond a reasonable doubt that the defendant carried upon or about his person a firearm not discernible by ordinary observation and that the defendant intended to so carry it as set forth in Instruction No. 5, then you must also consider whether the defendant was lawfully entitled to carry said weapon at the location of the offense charged. On this issue you are instructed that any legally qualified Sheriff, Police Officer, or other persons whose bonafide duty is to execute process, civil or criminal, make arrests, or aid in conserving the peace, may carry a concealed weapon upon or about his person *only in the municipality in which he is so impowered.*

The State has the burden of proving beyond a reasonable doubt that the defendant was not a legally qualified Sheriff, Police Officer, or other person whose bonafide duty is to execute process, make arrests, or aid in conserving the public peace at the location of the offense charged. If the evidence in this case leaves in your mind a reasonable doubt on this issue then you must find the defendant not guilty. (emphasis added).

■ This submits a special negative defense. *State v. Achter,* 514 S.W.2d 825

(1) All state, county and municipal law enforcement officers possessing the duty and power to arrest for violation of the general criminal laws of the state or for violation of ordinances of counties or municipalities of the state, or any person summoned by such officers to assist in making arrests or preserving the peace while actually engaged in assisting such officer;

(2) Wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime;

(3) Members of the armed forces or national guard while performing their official duty;

(Mo.App.1974). A special negative defense is one that presents a positive fact or set of circumstances which, if found, would negate one or more essential elements of an offense or which, if found, would constitute a legal defense. Comment 2 to MAI–CR2d 2.04.

Defendant contends that portion of the instruction which refers to the right of an officer or person to carry a concealed weapon *only* in the municipality in which he is so empowered misstates the law. Defendant relies on *State v. Owen,* 258 S.W.2d 662 (Mo.1953). In *Owen,* the defendant, a Taney County deputy sheriff, was convicted under § 564.610, RSMo. 1949 (predecessor statute to § 571.115). Defendant was on his own personal business in Boone County when he was arrested, but he contended that by virtue of his status as a deputy sheriff he was exempt from the provisions of the statute. The Supreme Court stated:

The powers, authority and duties of sheriffs, and of emergency deputy sheriffs such as defendant, are limited primarily to the county of the sheriff's election, the county for which the deputy sheriff is commissioned.... Defendant was a deputy sheriff in Taney County, but under instant circumstances he was not a deputy sheriff in Boone County. When in another county upon official business, which originates in the county of his election or appointment, a sheriff or his deputy clearly is entitled to the immunity of Section 564.610. But under these circumstances when in Boone County defendant

(4) Those persons vested by article V, section 1 of the Constitution of Missouri with the judicial power of the state;

(5) Any person whose bona fide duty is to execute process, civil or criminal.

Only the mayor of a first class city is entitled to the exemption in this statute. Section 85.230 denominates the mayor of a first class city a conservator of the peace and gives the mayor the power of arrest thus entitling him to the exception under 571.030.2(1). There are no similar provisions for the mayors of second, third or fourth class cities currently in effect.

was not entitled to the immunity of Section 564.610.

It may be conceded that the exemption of Section 564.610 was written into that statute for obviously sound reasons. When within the territorial limits of his own county, the sheriff or his commissioned deputy may be called upon at any time to perform duties which may require the use or display of the weapons listed by this statute. But when such a deputy sheriff commissioned as above is on business of his own and in another county hundreds of miles from the county wherein he has deputy sheriff authority, and where he could not be called upon under any circumstances to conserve the peace or execute process or make arrests or use deadly weapons there is no logical reason whatever for the application of the exception.

To construe the statute as contended for by defendant would produce a situation wholly out of accord with the legislative intent behind the statute's enactment.

    \*    \*    \*    \*    \*    \*

We rule that defendant's contention that under these circumstances the exclusion of this statute protected him from prosecution thereunder is without merit.

258 S.W.2d at 665.

Defendant contends that because the jury could have found that he was not on personal business as was the defendant in *Owen,* but on "official business," he was entitled to a proper instruction which would allow the jury to find him entitled to the exemption if he was on official business.

We think defendant's reliance on *Owen* is misplaced. The reference in *Owen* to "official business" clearly refers to the official business of a deputy sheriff who carries a weapon as a necessary tool of his office. This statement only recognizes the obvious, that when a law enforcement officer such as a deputy sheriff is in "hot pursuit" of a felon, transporting a prisoner or performing some other official business that requires him to enter another jurisdiction, he is entitled to the immunity of the statute. A law enforcement officer such as a police officer, or a sheriff on official business outside his jurisdiction will frequently need a weapon.

We have concluded a mayor stands on different ground. His law enforcement functions are more limited than police officers and sheriffs. A mayor, while on official business outside his jurisdiction, will rarely need a weapon to perform his duties, though, there are situations where he would. In those situations, an instruction entitling him to the immunity of the statute while on official business should be proffered. To this extent Instruction No. 6 misstates the law. However, this was not one of those situations. Defendant went to Jefferson City to see a state legislator and to retrieve a city owned car. Under no circumstances that we can perceive could he have been called upon in performing his official duties to use or display a weapon. We have concluded that neither *Owen* nor the legislature intended to allow a mayor of a third class city the immunity of the statute under these circumstances.

Even if the jury believed that defendant was on the official city business he claimed, we have concluded that as a matter of law it was not a legal defense to this offense and consequently defendant was not entitled to an instruction on that issue. Instruction No. 6 was not a proper statement of the law, but in light of our holding it was harmless error.

In defendant's last point he alleges the trial court erred in failing to submit an instruction based upon MAI–CR2d 2.38 because he introduced evidence that he reasonably relied upon Missouri statutes and the legal opinion of the Wellston city attorney that he was entitled to the immunity of Section 571.115.

MAI–CR2d 2.38 is based upon § 562.031.-2, which provides that:

A person is not relieved of criminal liability for conduct because he believes his conduct does not constitute an offense unless his belief is reasonable and

    \*    \*    \*    \*    \*    \*

(2) He acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in

(a) A statute;

(b) An opinion or order of an appellate court;

(c) An official interpretation of the statute, regulation or order defining the offense made by a public official or agency legally authorized to interpret such statute, regulation or order.

3. The burden of injecting the issue of reasonable belief that conduct does not constitute an offense under subdivisions (1) and (2) of subsection 2 is on the defendant.

The comment to MAI–CR2d 2.38 states "[t]his instruction covers the very limited situations when belief that conduct is not criminal can excuse." The evidence introduced by defendant did not entitle him to this instruction. Defendant testified that the city attorney advised him that he could carry a weapon within the boundaries of the City of Wellston, but he also acknowledged that the city attorney refused to advise him that he could carry the weapon outside the boundaries of the City of Wellston.[5] In fact, defendant's legal advisers appeared to have serious doubt that the mayor could do so. Thus, defendant did not act in reliance upon a legal opinion that his conduct did not constitute an offense. The statutes which defendant relied upon do not state that his conduct here was legal and thus his stated reliance on these statutes did not justify the proffered instruction.

Affirmed.

CRIST, J., concurs.

KAROHL, J., dissents in separate opinion.

KAROHL, Judge, dissenting.

I respectfully dissent and would grant defendant a new trial on the ground that Instruction No. 6 failed to follow the substantive law.

Instruction No. 5, the verdict directing instruction required the jury to make four factual findings: (1) on January 2, 1981, defendant carried upon or about his person a firearm; (2) it was not discernible by ordinary observation; (3) defendant intended to carry it; and (4) defendant was not lawfully entitled to an acquittal as defined in Instruction No. 6. Defendant admitted the first three elements of the instruction.

Instruction No. 6, as quoted in the majority opinion, informs the jury that they must consider whether defendant was lawfully entitled to carry the weapon at the location of the offense charged. The instruction states further and the majority opinion assumes that a person whose bonafide duty is to aid in conserving the peace, may carry a concealed weapon *only in the municipality in which he is so empowered.* Since the evidence was undisputed that defendant was not in the city of Wellston when charged, there was no way that the jury could have acquitted defendant based on Instruction No. 6. Read together, Instructions 5 and 6 mandated the jury to find defendant guilty and denied him a defense. In fact it holds the defendant was guilty as a matter of law.

The majority opinion concludes that a mayor of a third class city was entitled to immunity within the city of Wellston under § 571.115 as a person having a bonafide duty to aid in conserving the peace.[1] Although I agree with that conclusion I cannot agree with the jurisdictional limitation placed upon defendant in Instruction No. 6.

In *State v. Owen,* 258 S.W.2d 662 (Mo. 1953), the issue before the court was whether the immunity under the predecessor to § 571.115 applies "when such persons are

---

5. We need not determine whether the city attorney is an appropriate official upon whom one can rely for an official interpretation of a state criminal statute for purposes of this defense.

1. The parties tried the case on this premise and Instruction No. 6 assumes this to be the law.

not acting in the line of their official duty and are outside the geographical boundaries of the territory for which they were commissioned and in which they could claim any authority or jurisdiction as an officer." *Id.* at 663. There was no dispute in *Owen* that the defendant was not an official duty.

*Owen* is clearly no authority for the broad statement in Instruction No. 6 that *in any situation,* a police officer, sheriff or other person whose bonafide duty is to aid in conserving the peace cannot carry a concealed weapon outside of the municipality in which he is so empowered. Instruction No. 6 would bar police officers on duty from entering other municipalities with concealed weapons. Not only is this clearly not the intent of the legislature, it is contrary to the statement in *Owen* that "when in another county upon official business, which originates in the county of his election or appointment, a sheriff or his deputy clearly is entitled to the immunity of Section 564.610 [later § 571.115]."

The majority opinion attempts to distinguish sheriffs from mayors on the basis that the ordinary duty of a sheriff would require the use of a weapon. This distinction is not supported by the clear language of § 571.115 and is not consistent with *Owen.* The statute defining the crime and excluding certain categories of persons makes no mention of how, when or where those persons can carry a concealed weapon. It makes no distinction between any of the categories. *Owen* holds that a deputy sheriff is not an immune person when outside of his county of authority on strictly personal business. Had the deputy contended that he was on official business, and the state had denied it, the dispute would have raised an issue of fact for the jury. This defense was offered by appellant. *Owen* did not require the deputy sheriff to be on official business requiring the use of a weapon in order to justify immunity. Rather, *Owen* required that the official business originate in the county of authority and that the deputy sheriff be engaged on official business. It would be for the legislature and not this court to make a distinction in the categories defined by the statute. In this respect, the statute has been repealed and a new statute, § 571.030 RSMo.Supp.1982, effective August 1, 1981 enacted.[2] The mayor of a third class city is no longer immune under the new statute.

The focus then, should have been on whether, at the time of his arrest, defendant was on official business. The jury should have been instructed under *Owen,* that a person whose bonafide duty is to aid in conserving the peace may only carry a concealed weapon in the municipality in which he is so empowered, unless he was on official business. There was enough evidence here that defendant was on city business to justify the instruction. Defendant testified that he was issued the city weapon before he left Wellston; that it was justified and necessary because of threats he had received; that he went to Jefferson City to retrieve a city owned car, attempted to see a state legislator about city business, and was returning the vehicle to the city when he was stopped. It is conceivable that the mayor's further performance of duty within the city would be promoted by use of the retrieved vehicle after its return to the city. It was for the jury to determine whether defendant was, as the mayor of the city of Wellston, on official business at the time and place of his arrest.

An instruction must precisely follow the substantive law. *State v. Harris,* 636 S.W.2d 403, 406 (Mo.App.1982). As Instruction No. 6 clearly misstated the law under *Owen,* I conclude that defendant should receive a new trial and must dissent.

2. See majority opinion Footnote 4.