ROBERT HANDY & others[1] *vs.* PENAL INSTITUTIONS
COMMISSIONER OF BOSTON & others.[2]

Suffolk. March 4, 1992. - June 5, 1992.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Civil Rights*, Attorney's fees. *Practice, Civil*, Attorney's fees.

In a class action by inmates against the officials responsible for a county
house of correction, based in part on the plaintiffs' claims that the con-
ditions of their confinement violated their constitutional rights, the
complaint was sufficient to state a civil rights claim under 42 U.S.C.
§ 1983 (1988). [763-764]

In a civil rights action under 42 U.S.C. § 1983 (1988), a single justice of
this court correctly concluded that the plaintiffs, inmates of a county
house of correction, were successful litigants for the purpose of their
entitlement to an award of attorneys' fees under § 1988, where the rec-
ord, including the parties' agreements relating to settlement of the liti-
gation, supported his finding that the lawsuit was an important factor
in achieving certain improvements in the conditions of the plaintiffs'
confinement. [764-766]

In a proceeding for the award of attorneys' fees under 42 U.S.C. § 1988
(1988) to successful plaintiffs on Federal civil rights claims, a single
justice of this court properly considered the matter of hours expended
and attorneys' hourly rates on the facts presented in affidavits submit-
ted by the plaintiffs [766-768], and he did not abuse his discretion by
imposing a reduction of one-fourth in the amount of fees claimed,
where the plaintiffs did not demonstrate conclusively that contempora-
neous time records were kept [768].

---

[1]Michael Nance, Dennis Bennett, Robert Higgins, Paul Dixon, Ricky
Morgan, and Alex Chaparro. Each plaintiff was an inmate at the Suffolk
County house of correction.

[2]The mayor of Boston, the members of the Boston city council and the
superintendent of the Suffolk County house of correction, in their official
capacities.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 9, 1986.

A motion for an award of attorneys' fees was heard by *Liacos*, C.J.

*Peter Antell* (*J. Daniel Lindley* with him) for the defendants.

*John Reinstein* (*Kenneth J. King* with him) for the plaintiffs.

WILKINS, J. The defendants appeal from a judgment, entered by a single justice of this court, awarding attorneys' fees to the plaintiffs in this class action, which was based in part on claims of violations of constitutional rights protected under 42 U.S.C. § 1983 (1988). The defendants argue that (1) defects in the complaint, which they have not waived, bar recovery of attorneys' fees under 42 U.S.C. § 1988 (1988); (2) attorneys' fees may not be awarded under § 1988 because this action was not a cause of improvements that the defendants made in the Suffolk County house of correction at Deer Island (Deer Island); and (3) the documentation submitted in support of the award of attorneys' fees did not justify the award of any fee, or at least the fees allowed.[3] In passing on these issues, we shall explain why none of the various other issues that the defendants claim are undisputed is dispositive of the attorneys' fee issue in the defendants' favor. The plaintiffs in turn have appealed, as to all but one attorney, from the single justice's decision to reduce the amount of the fees they claimed. The single justice reduced the plaintiffs' claim because they did not produce before him their contemporaneous time records for the work performed on the case.

We reject each of the defendants' arguments that, if accepted, would deny the plaintiffs any award of counsel fees at

---

[3]The defendants also argue that their agreement to pay attorneys' fees pursuant to § 1988, contained in an agreement of the parties to dispose of a portion of the plaintiffs' claims, was an agreement to pay counsel fees only to the extent that an award of such fees could lawfully be made pursuant to § 1988. Because we conclude that the award of counsel fees was lawful under § 1988, we need not consider this argument.

all. We also reject the arguments of each side that the single justice erred in determining the amount of the fees he awarded.

We summarize aspects of the complaint, filed in October, 1986, which alleged that the defendants had allowed Deer Island "to deteriorate to the point that it cannot safely be used to house prisoners." The conditions are dangerous and unlawful due to the inability or unwillingness of the defendants and their predecessors to correct them. The conditions at Deer Island "pose a substantial risk of fire and constitute a threat to the lives and safety of the plaintiffs." The fire alarms and smoke detection equipment are inoperative or nonexistent; there are not enough fire extinguishers; water pressure is extremely low; there is no functioning emergency lighting; and training in fire protection and evacuation procedures is deficient.

The living areas at Deer Island are filthy and generally unfit for human habitation. There are rats, cockroaches, and other insects. Birds are nesting in light fixtures. The unsafe and unsanitary conditions "result [from] the failure of the defendants and their predecessors to establish adequate rodent control, housekeeping and maintenance procedures." The heating and ventilation are inadequate. The plumbing and sanitary conditions also are inadequate. One dormitory has only two showers for approximately fifty inmates. Another dormitory has only one shower, two toilets, and three sinks for approximately forty-five prisoners. The lighting is inadequate, and there are insufficient working lights and electrical outlets. The cells in two buildings are eight feet three inches long, six feet wide, and seven feet high.

Deer Island houses "nearly twice the lawful capacity" of its buildings. Prisoners are frequently housed in cells in buildings that do not have working plumbing fixtures, electricity, or locks. Recreation areas are inadequate.

The complaint alleged that the fire safety deficiencies, the unsanitary conditions, and the overcrowding at Deer Island, each constituted cruel and unusual punishment "in violation of the Eighth and Fourteenth Amendments to the United

States Constitution" and is actionable under 42 U.S.C. § 1983. The complaint further alleged violations of the Constitution of the Commonwealth, the State Civil Rights Act and other statutes, and various State regulations.

In December, 1986, a single justice of this court referred the case to a master who first considered the subject of fire safety. In April, 1987, the parties entered into a partial settlement agreement, which the single justice approved, concerning fire safety-related issues. The defendants, among other things, agreed to close certain areas; to make certain repairs and improvements in the fire and smoke alarm systems; and to make repairs in the water distribution and electrical systems. The defendants agreed to pay the plaintiffs "interim attorneys fees and costs pursuant to 42 U.S.C. § 1988," and, if no agreement could be reached on the amount, the court would determine the amount of the fees and costs.

In March, 1988, the master issued a report on the institution's overcrowding. He noted that constitutional issues were before him but that it would be premature to decide them. He concluded that double-celling of prisoners and deficiencies in certain buildings violated regulations of the Departments of Correction and Public Health. The single justice adopted that report and referred the matter to the master for a report on remedies. In February, 1989, following the filing of the master's final report on remedies for overcrowding, the single justice allowed the master's final report as to its factual findings and entered extensive orders designed to remedy problems of overcrowding. In January, 1990, the parties entered into a final settlement agreement, which a different single justice has approved. That agreement addressed additional physical improvements and contained a promise to close Deer Island within six months of the opening of a new facility in the South Cove section of Boston.

The question of attorneys' fees and costs in this appeal concerns the period from the commencement of this action until the date in September, 1989, when the case was transferred from the first single justice to the second. The first single justice ruled that the plaintiffs had succeeded on sig-

nificant issues in litigation and had achieved some of the benefits they sought in this lawsuit. He said that the master and he had spent many hours prodding the defendants to action and to comply with their promises. He found that the plaintiffs' action was a necessary and important factor in achieving improvements and was not frivolous, unreasonable, or groundless. He awarded attorneys' fees under § 1988.

1. We reject the defendants' argument that the complaint improperly failed to allege a violation of § 1983 and that, therefore, no award of attorneys' fees could properly be made under § 1988. The argument focuses on a question of pleading and not on a question of proof. In this era of notice pleading, such a claim has far less chance of success than in the days of technical pleading.[4]

The complaint was not subject to dismissal for failure to state a claim that would entitle the plaintiffs to relief under § 1983. The complaint did not show beyond doubt that the plaintiffs could not prove any set of facts that would entitle

---

[4]Because we conclude that the complaint was adequate to allege a § 1983 violation, we need not pass on the plaintiffs' argument that the defendants have raised the pleading point too late and have waived it. In the agreement to settle a portion of the plaintiffs' claims, to which we have already referred, the defendants agreed to pay counsel fees pursuant to § 1988 with respect to that portion of the claim that was settled. If the defendants believed that § 1983 relief was not properly part of this action, we doubt that they would have agreed to pay counsel fees pursuant to § 1988.

The defendants' contention that they are immune from paying attorneys' fees is argued in the defendants' brief only as to the defendants in their individual capacities. This action, however, is against the defendants in their official capacities. See *Hutto* v. *Finney*, 437 U.S. 678, 693, 699-700 (1978). Thus the only question, assuming that we will consider the immunity point as restated in the defendants' reply brief, is whether, in this § 1983 action involving only injunctive relief, immunity is a bar to the award of attorneys' fees under § 1988. Government actors who have been sued successfully under § 1983 in their official capacities, as representatives of the governmental entity, cannot avail themselves of any personal immunity defenses against an award of attorneys' fees under § 1988. See *Pulliam* v. *Allen*, 466 U.S. 522, 543-544 (1984). See also *Supreme Court of Va.* v. *Consumers Union of U.S., Inc.*, 446 U.S. 719, 737 (1980). Consequently, the governmental entity whom the defendants represent must pay attorneys' fees awarded under § 1988. See *Hutto* v. *Finney*, *supra* at 693-694.

them to § 1983 relief. See *Nader* v. *Citron*, 372 Mass. 96, 98 (1977). Cases on which the defendants rely concern failures of proof and not defects in complaints.

From our summary of the allegations of the complaint, it is apparent that the plaintiffs were asserting a violation of their constitutional rights under the Eighth Amendment, that they were objecting to specific conditions of their confine-, ment, and that they claimed that the defendants were responsible for those conditions. The absence of an explicit allegation concerning the defendants' state of mind, such as "deliberate indifference," is not fatal to the complaint. Five years after this complaint was filed, the Supreme Court of the United States sharply disagreed over whether any state of mind element was required to prevail on an Eighth Amendment claim of inadequate conditions of confinement. See *Wilson* v. *Seiter*, 111 S. Ct. 2321 (1991) (five-to-four decision). The allegation that the defendants "have been unable or unwilling to correct the dangerous and unlawful conditions at the facility" concerns the defendants' culpable state of mind. It was clear, moreover, from the complaint that, to prevail under § 1983 in a case involving conditions of confinement, the plaintiffs would have to prove whatever culpable state of mind on the part of one or more of the defendants (or any unconstitutional policy or practice) was necessary to establish Eighth Amendment liability. See *Morales* v. *New York State Dept. of Corrections*, 842 F.2d 27, 30 (2d Cir. 1988); *DeMallory* v. *Cullen*, 855 F.2d 442, 445 (7th Cir. 1988). Cf. *Gillespie* v. *Crawford*, 833 F.2d 47, 50 (5th Cir. 1987).

2. We reject the defendants' other arguments that an award of attorneys' fees under § 1988 is not permissible in the circumstances.

The plaintiffs were successful litigants for the purpose of their entitlement to an award of attorneys' fees. They succeeded on significant issues in this action because they achieved "some of the benefit [they] sought in bringing suit." *Texas State Teachers Ass'n* v. *Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). The defendants argue, however,

that the plaintiffs were not prevailing parties because the plaintiffs were not the catalyst that prompted change at Deer Island. The defendants point to plans for improvements at Deer Island adopted prior to the commencement of this action and to an order for changes entered in 1984 in another lawsuit. The master found that, especially since 1985, significant steps to correct serious deficiencies at Deer Island had been taken. These facts are not, however, dispositive of the issue.

The agreements reached between the parties support the single justice's conclusion that the plaintiffs were prevailing parties. See *Draper* v. *Town Clerk of Greenfield*, 384 Mass. 444, 453 (1981), cert. denied sub nom. *Draper* v. *Prescott*, 456 U.S. 947 (1982) (attorney's fee award proper where case ends in negotiated settlement). The single justice found that the lawsuit was a necessary and important factor in achieving certain improvements at Deer Island. The record does not demonstrate that this conclusion, to the extent it involves a finding of fact, was clearly erroneous. Mass. R. Civ. P. 52, 365 Mass. 816 (1974). The settlement concerning fire safety provided relief in numerous respects. The final settlement provides for various other improvements at Deer Island and for the ultimate closing of Deer Island.

The defendants' only remaining argument asserting that the plaintiffs were not a catalyst for change is that the promised improvements would have been undertaken in any event and thus were gratuitous. The record does not support this claim. The course of the proceedings demonstrates that what the defendants promised to do and what they did do were, in considerable measure, the products of pressures exerted by this lawsuit.

The defendants' further argument that the plaintiffs' allegations and the findings of the master and the single justice did not raise a colorable claim of a constitutional violation lacks merit. The single justice ruled that the record and the views of Deer Island that he and the master took supported the plaintiffs' claim that "they were confined in a place not only filthy but unfit for human habitation." The plaintiffs'

Federal constitutional claims were thus not frivolous or groundless, and an award of attorneys' fees pursuant to § 1988 was warranted, even if the relief obtained may have been based on some requirement of law other than a standard stated in § 1983.

The State claims were pendent to a substantial Federal constitutional claim because the Federal claim arose from the same nucleus of facts (the deplorable living conditions at Deer Island) on which the State law claims were based. Those circumstances warranted the award of counsel fees under § 1988. See *Maher* v. *Gagne*, 448 U.S. 122, 132-133 n.15 (1980). It is not required that the elements of the State claim and the elements of the Federal constitutional claim be identical, only that the claims arose from the same underlying nucleus of facts. See *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 317 (1982); *Lund* v. *Affleck*, 587 F.2d 75, 77 (1st Cir. 1978).

3. Finally, we deal with challenges, based on the material presented to the single justice, that the amount of the fee awarded was inappropriate.

We consider first the defendants' objections. They argue that the plaintiffs are entitled to no fee because they have provided inadequate documentation of the hours devoted to the case and of the applicable hourly rates. In particular, the defendants argue that the plaintiffs have not adequately documented the hourly rates allocable to the various tasks performed at various times by different people. The defendants also argue that, unless contemporaneous time records are submitted, no attorneys' fees may be allowed at all. They contend, in any event, that the single justice's conclusions are not supported on this record and that we must return the issue to him for further consideration on a proper record.

We assess these contentions in light of the findings and conclusions of the single justice. He said, as to the number of hours for which compensation was requested, that "[i]n addition to my own observations of the progress of this case and the work of the plaintiffs' attorneys (including their work product), I have reviewed the materials submitted as to num-

ber of hours expended and I do not find that any of them are duplicative, unproductive, excessive or otherwise unnecessary. I also find them reasonable in light of the work performed and who performed it." He further found the requested hourly rates to be reasonable, "[b]ased on the affidavits of several attorneys practicing in the Boston area submitted by the plaintiffs, and on my own personal knowledge of hourly rates in the Boston area at all relevant historical times." He added that, in reaching this conclusion, he had "taken into consideration the experience of the attorneys involved (as averred to in their affidavits), and the length, complexity, and contingent nature of the lawsuit."

The matter of hours expended and hourly rates was considered on the facts presented in affidavits submitted by the plaintiffs. The defendants did not submit affidavits, request an evidentiary hearing, or move for the production of the plaintiffs' contemporaneous time records. The defendants' assertion that the plaintiffs offered no evidence of the time for which they claimed compensation is simply wrong. The single justice was not obliged to apply different hourly rates to the various tasks counsel performed. See *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983); *Glass* v. *Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1563 (5th Cir. 1985). Nor did he err in applying hourly rates appropriate at the end of 1990, rather than from 1984 to 1989. See *Missouri* v. *Jenkins*, 491 U.S. 274, 283-284 (1989). It is not the law that a request for attorneys' fees must be entirely denied when a fee applicant does not submit contemporaneous time records to the court. The Supreme Court of the United States has not announced such a requirement. Nor is it the general rule in the lower Federal courts. See *Weinberger* v. *Great N. Nekoosa Corp.*, 925 F.2d 518, 527 (1st Cir. 1991) ("application was bereft of contemporaneous time records or *any other suitable documentation*" [emphasis supplied]); *Jean* v. *Nelson*, 863 F.2d 759, 772 (11th Cir. 1988), aff'd sub nom. *Commissioner, INS* v. *Jean*, 496 U.S. 154 (1990) ("contemporaneous time records are not indispensable where there is other reliable evidence to support a claim for attorney's fees"); *MacDissi* v.

*Valmont Indus., Inc.*, 856 F.2d 1054, 1061 (8th Cir. 1988) ("question of whether reconstructed records accurately document the time attorneys have spent is best left to the discretion" of the trial judge; absence of contemporaneous time records may warrant reduction or elimination of attorneys' fee awards); *Grendel's Den, Inc.* v. *Larkin*, 749 F.2d 945, 952 (1st Cir. 1984) (stating prospective rule for the circuit that "absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance"). In some circuits contemporaneous time records must be produced on request or a claim for attorneys' fees will be denied. See *Ramos* v. *Lamm*, 713 F.2d 546, 553 (10th Cir. 1983); *National Ass'n of Concerned Veterans* v. *Secretary of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). In this case, neither the defendants nor the single justice requested the production of contemporaneous time records. An affidavit of one counsel for the plaintiffs attests that an attached compilation of time devoted to the case by attorneys in his firm was based on contemporaneous records maintained by his office. The single justice did not err in rejecting the defendants' various objections to the allowance of attorneys' fees.

The single justice noted that the plaintiffs had failed to provide him with contemporaneous time records and concluded that a reduction of one-fourth in the amount of the fees claimed was, therefore, called for, citing *Grendel's Den, Inc.* v. *Larkin*, *supra* at 952. The plaintiffs object to that reduction as to the attorneys in the law firm that represented the plaintiffs (but not as to Mr. Reinstein). Although such a reduction was not required on the record before the single justice, and the reduction seems inconsistent with his finding, noted above, that the hours for which compensation was claimed were reasonable, the single justice did not abuse his discretion in reducing the fee award in the absence of the contemporaneous records themselves. It is not unreasonable to impose a reduction in the compensation awarded when the party seeking an award of attorneys' fees does not demon-

strate conclusively on the record that contemporaneous time records were kept.

4. We affirm the orders of the single justice entered on September 17, 1991, concerning attorneys' fees. Consistent with those orders, the plaintiffs' attorneys' fees and expenses in connection with this appeal will be allowed in amounts determined by a single justice.

*So ordered.*