MARIA TATAR *vs.* STEPHEN A. SCHUKER.

No. 06-P-1312.

Middlesex. May 17, 2007. - October 9, 2007.

Present: DUFFLY, ARMSTRONG, & KAFKER, JJ.

*Contempt. Practice, Civil,* Contempt, Attorney's fees. *Divorce and Separation,* Child support.

Discussion of the statutory framework for child support orders, which reflects a legislative intent to require parents to support their unemancipated children, and the history of G. L. c. 208, § 28 (authorizing the Probate and Family Courts to make orders for child support), which demonstrates that the Legislature did not intend emancipation presumptively to occur at age eighteen. [440-446]

Statement that, except in a case of educational support, a trial judge considering a child support order is not required to wait until a child nears the end of his or her minority to make an order for general support that continues until a child is emancipated, by virtue of continued dependency on and domicile with a custodial parent. [446]

A Probate and Family Court judge erred in finding the father in contempt based on his failure to make child support payments beyond his child's eighteenth birthday pursuant to a support order that lacked a termination date, where although the judge appropriately concluded that the father's child support obligations did not expire when the child reached the age of majority, in light of the fact that no issue had been raised whether the child remained principally dependent on his mother for support and domiciled in her home, the divorce judgment was not sufficiently clear on the father's ongoing obligation so as to support a finding of contempt. [446-449]

This court declined to address whether, in the context of a contempt action brought by a custodial parent for failure to pay child support, an obligor parent may obtain prospective relief based on Social Security benefits paid to the child as a consequence of the obligor parent's age. [449]

A probate judge properly denied a party's request for evidentiary hearings on certain contempt matters, where the party failed to identify any issue of material fact that was timely raised. [449-450]

A probate judge did not abuse her discretion either in awarding attorney's fees in connection with certain contempt judgments, or in determining the amount of such award without an evidentiary hearing. [450-451]

Recusal was not mandatory in an action for contempt where there was no allegation of any specific act by the judge that could denote partiality. [451-452]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on August 3, 1988.

Complaints for contempt, filed on August 26, 2005; January 27, 2006; and February 10, 2006, respectively, were heard by *Judith Nelson Dilday*, J., and a motion for relief from judgment was also heard by her.

*Paul S. Neustadt* for the defendant.

*Donald G. Tye* (*Peter A. Kuperstein* with him) for the plaintiff.

DUFFLY, J. Stephen A. Schuker (father) appeals from three judgments of contempt entered against him in the Probate and Family Court when he failed to pay child support determined to be due to Maria Tatar (mother) under the terms of their divorce judgment. The father claims that (1) in the absence of a modification judgment ordering that support continue beyond age eighteen, G. L. c. 208, § 28, must be read to provide for automatic termination of his support obligation upon the younger child reaching age eighteen; (2) he was wrongfully denied evidentiary hearings in connection with the contempt proceedings; (3) his support obligation should have been reduced by the amount of Social Security payments allegedly received by the younger child; (4) attorney's fees should not have been awarded to the mother; and (5) the judge should have recused herself.

The father's primary contention in this appeal is that because the child support obligation imposed by his divorce judgment contained no termination date or other contingency specifically related to ending the obligation, it ended automatically upon his younger child's reaching the age of eighteen. We decide that the probate judge hearing the contempt actions could properly conclude that the father's obligation continued until the child was emancipated as defined by G. L. c. 208, § 28, as amended by, St. 1976, c. 29, § 1 (i.e., the child has attained age eighteen but "not attained age twenty-one, . . . is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance"); however, because the order was not sufficiently clear on this point, he could not be held in contempt in connection with the first proceeding. We affirm in part and reverse in part.

1. *Background.* Two children were born to the parties during

their marriage: a son, in October, 1986, and a daughter, in June, 1984. When the parties were divorced by a judgment nisi, following a trial, the children were three and five years old. By an amended judgment dated October 11, 1989, nunc pro tunc to July 31, 1989, the mother was adjudged the "primary custodial parent," and the father was ordered to pay "to the [mother] as child support the sum of two hundred and eighty-six ($286.00) dollars each week, beginning forthwith, and each week thereafter." The judgment is silent as to termination of this obligation.

By the fall of 2004, both children had graduated high school and were full-time college students.[1] The child support provision of the divorce judgment was not modified throughout this period.[2] When the younger child turned eighteen years old at the end of October, 2004, the father stopped making child support payments, and the mother filed the first of the three contempt actions at issue here.

In the first contempt complaint, filed in August, 2005, the mother alleged that the father had failed to pay weekly child support as ordered by the divorce judgment, in essence claiming that the divorce judgment required support to continue until the children were emancipated under the statute and that the younger son was not emancipated.[3] Answering the complaint, the father admitted "that he [had] failed to make some of the child sup-

---

[1]The divorce judgment made no provision for the children's college education, see *Passemato* v. *Passemato*, 427 Mass. 52, 54 (1998) ("as a general rule, support orders regarding the future payment of post-high school educational costs are premature and should not be made"); *Ketterle* v. *Ketterle*, 61 Mass. App. Ct. 758, 765 (2004); *Braun* v. *Braun*, 68 Mass. App. Ct. 846, 855 (2007), but did provide "for the management of the UGMA [Uniform Gift to Minor's Act] accounts for the benefit of both [children]." See note 4, *infra*.

[2]Prior to the proceedings that are the subject of this appeal, the parties litigated other matters arising out of the judgment that are not relevant to issues raised in this appeal. See *Tatar* v. *Schuker*, 31 Mass. App. Ct. 534 (1991); *Tatar* v. *Schuker*, 38 Mass. App. Ct. 1119 (1995).

[3]The mother also alleged that the father had not obeyed the divorce judgment by "[f]ailing to provide the [mother] with quarterly reports on any changes that he made in the portfolio of the [UGMA] custodial accounts" set up for the benefit of the children, and by "[f]ailing to convey to the [mother]" her residence in Cambridge; and that he failed to obey the terms of an order incorporating a stipulation of the parties dated August 14, 1996, by not making a payment in connection with tax interest and penalties. These claims, ad-

port payments," and set forth no defense to his nonpayment.[4] Nowhere in his answer did the father raise the defense that the younger child was no longer domiciled with the mother nor principally dependent on her for support, and nothing in the record on appeal reflects that, in connection with his request for an evidentiary hearing, the father made a timely offer of proof that the son's domicile had changed from that of his mother or that he was no longer principally dependent upon her for noneducation support.[5] See note 14, *infra.* The probate judge denied his request for an evidentiary hearing and found the father in contempt on the basis of his admissions that he failed to make the child support payments — determined to be in the amount of $14,681 — and made no claim that he was unable to pay.

In a motion for relief from this judgment, Mass.R.Dom.Rel.P. 60(b), the father set forth in an "Offer of Proof" the following: the amended judgment of divorce obligated him to pay weekly child support in the amount of $286; the "judgment [made] no provision for termination of child support" and "no mention of emancipation of minor children"; the parties' younger child "became 18 years of age on October 29, 2004"; the "[f]ather paid weekly child support through the end of October, 2004"; the son received $3,508 from the Social Security Administration in November, 2004, for which he was eligible "on account of Father's age"; in June, 2005, "Father paid Mother $969.63" for the son "which he was not required to pay"; and "Mother

_____

dressed in a stipulation of the parties, see note 4, *infra,* are not the subject of this appeal.

[4]The father's answer also included a counterclaim seeking a determination as to "the responsibilities of the parties with respect to undergraduate college education of the children." The father dismissed the counterclaim pursuant to Mass.R.Dom.Rel.P. 41(a)(1)(i). Thereafter, in a stipulation incorporated into the judgment dated March 10, 2006, the parties agreed, among other things, that the children's "UTMA and/or UGMA accounts" would be transferred to accounts in the children's names, with the intention that "after [the] funds [were] transferred to the children individually in the first instance the [identified] funds . . . [would] be used for college education of [the children]."

[5]The record does not include transcripts of the hearings on the first and second contempt complaints. On this basis alone, we cannot say the judge was wrong to decide as she did. See *Borne* v. *Haverhill Golf & Country Club, Inc.,* 58 Mass. App. Ct. 306, 325 (2003) (findings not clearly erroneous on their face where appellant "furnished no transcript of the contempt hearing that might provide a basis for examining them further").

has made no contribution to the college expenses (either tuition or living) . . . of the children." The motion showed that the father's defense to the contempt judgment was one of law, not fact: the father claimed that his obligation terminated by operation of law "on the eighteenth birthday of the youngest child" and that the mother "must file a Complaint for Modification," if she "wishe[d] to receive child support" after that date. The judge denied the motion.

In her second and third complaints, filed in January and March, 2006, the mother sought additional unpaid child support accumulated since entry of the first contempt judgment, as well interest on the unpaid support.[6] Following nonevidentiary hearings, the father was found in contempt and judgments entered against him. The judgment on the January complaint fixed the arrearage at $5,270, and further provided that "[t]he father shall pay *child support for the children who are unemancipated according to the statute* retroactive to his last payment" (emphasis added). Judgment on the March complaint fixed the additional arrearage at $5,148, adding twelve percent interest to this sum for the period from the date of filing the complaint to the date of judgment. In addition, as to the second and third contempt complaints, the mother was awarded attorney's fees in amounts of $7,746.10 and $5,636.25, respectively.

The father appealed from the three contempt judgments and the denial of his rule 60(b) motion for relief from judgment.

2. *Discussion.* a. *Judgments of contempt.* (i) *Analytical framework.* Because this case involves a divorce judgment that did not incorporate an agreement of the parties,[7] we begin our discussion by looking to G. L. c. 208, § 28, which provides authority

---

[6]The March complaint also alleged that the father failed to transfer the daughter's UTMA account in accordance with the terms of the judgment. The father was found in contempt for failing to make the transfer, but advances no argument in this appeal in connection with this aspect of the judgment.

[7]This case presents no question of the parties' intent as to the meaning of a child support provision in an agreement that has been incorporated in a judgment. Cf. *Kotler* v. *Spaulding*, 24 Mass. App. Ct. 515, 518 (1987) ("[T]here is a significant difference between a provision for education rendered by a judge pursuant to [G. L. c. 208,] § 28[,] following litigation, and a judgment or order which incorporates and requires compliance with the provision of a bargained-for agreement. . . . Under § 28, when the judge is acting on his or her own initiative to make an order for maintenance, support, or education,

to the Probate and Family Courts to make orders for child support.[8] The particular portion of § 28 with which we are concerned provides:

> "Upon a judgment of divorce, the court may make such judgment as it considers expedient relative to the care, custody and maintenance of the minor children of the parties. . . . The court may make appropriate orders of maintenance, support and education of any child who has attained age eighteen but who has not attained age twenty-one and who is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance."[9]

It is the father's continued obligation for general support of his children, and not a new obligation to contribute to their education, that is at issue in this case. That the younger child's domicile remained with his mother and that he continued to be principally dependent on her for support after he reached age eighteen were not timely raised as issues of fact below. See notes 18 & 20, *infra.* This is very likely because the father pin-

---

the judge is limited by the strictures of that section"). Thus, the father's reliance on *Chenery* v. *Chenery,* 13 Mass. App. Ct. 943, 944 (1982), and *Hobson* v. *Perry,* 13 Mass. App. Ct. 944, 945 (1982), involving interpretation of the parties' intent, is misplaced.

[8] "The statutes governing the [recipient parent's] right to . . . child support constitute 'a complete statutory system, intended to cover the field of civil liability for maintenance between [the obligor and recipient parent]. . . . There is in this Commonwealth no nonstatutory right to sue for . . . support.' " *Orlandella* v. *Orlandella,* 370 Mass. 225, 227 (1976), quoting from *Gediman* v. *Cameron,* 306 Mass. 138, 140 (1940).

[9] The use of the word "may" in these provisions of G. L. c. 208, § 28, as in the first sentence of that section, appears to be a grant of authority, not discretion. See *Newton Police Assn.* v. *Police Chief of Newton,* 63 Mass. App. Ct. 697, 698 (2005) ("statutes so worded presumptively use the word 'may' in the sense of . . . 'is authorized or empowered' "). This view is supported by the titles of the acts that inserted and amended the statutory language at issue, St. 1975, c. 661, § 1, and St. 1976, c. 279: "An Act Permitting the Probate Court to Make Appropriate Orders of Maintenance for Children under the Age of Twenty-One Years Who Are Dependents of and Who Reside in the Home of a Parent," and "An Act Authorizing the Probate Court to Make Appropriate Orders of Support and Education for Children under Twenty-One Years of Age," respectively. See *Missouri* v. *Henderson,* 660 S.W.2d 373, 377 (Mo. 1983) (proper to consider title of act in arriving at intent of legislature); *North Carolina* v. *Hodge,* 121 N.C. App. 209, 210 (1995) (same). See also 2A Singer, Sutherland Statutory Construction § 47:3, at 219 (6th ed. 2000).

ned success not on a determination of these facts in the context of the contempt action, but on his legal argument that under the language of the divorce judgment, termination of his obligation was automatic when his son reached eighteen. Nor has any question been raised as to the father's ability to pay. Thus, we are faced with the narrow question whether the provision in the divorce judgment ordering the father to pay "to the [mother] as child support the sum of two hundred and eighty-six ($286.00) dollars each week, beginning forthwith, and each week thereafter," presents a clear and unambiguous command to the father that his child support continue until the younger child is emancipated under the statute. See *Larson* v. *Larson*, 28 Mass. App. Ct. 338, 340 (1990) ("to find a defendant in civil contempt there must be a clear and unequivocal command and an equally clear and undoubted disobedience"). We conclude that the father's obligation to support continues until his son's emancipation, and did not expire when he reached his eighteenth birthday, but that the order was not sufficiently clear on this point so as to support a finding of contempt. Also, in the circumstances presented, the mother was not required to file a modification complaint to establish the father's continued obligation for child support.

We begin our discussion by observing that the statutory framework clearly reflects a legislative intent to require parents to support their unemancipated children.[10] See *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 444 & n.17 (2000). It is "the declared public policy of this Commonwealth 'that dependent children shall be maintained, as completely as possible, from the resources of their parents.' " *Id.* at 446, quoting from G. L. c. 119A, § 1, and citing G. L. c. 209C, § 20. The mother in the *L.W.K.* case brought an action that established paternity of the parties' son, then not quite two; the trial judge "ordered the father to pay

---

[10]Although often used in our decisional law, the word emancipation does not appear in statutes authorizing courts to make provision for the support of children. " 'Emancipation' is a legal term of art that relates to the cessation of rights and duties between parent and child. . . . '*Whether* an emancipation has occurred is a question of fact . . . . *What* constitutes emancipation, however, is a question of law.' " *Eccleston* v. *Bankosky*, 438 Mass. 428, 434 n.13 (2003), quoting from 1 D.T. Kramer, Legal Rights of Children, § 15.01, at 665 (2d ed. 1994).

child support of $100 a week to the mother, the order to remain in effect 'until further order of the Court.' " *L.W.K.* v. *E.R.C.*, *supra* at 440. The court noted that "[i]n this case, the child support order is in force *until the child is emancipated* or 'until further order of the Court,' " *id.* at 446 (emphasis added),[11] and held that where neither contingency had occurred, the support obligation survived the death of the father. *Id.* at 446-447. Among the authorities quoted in *L.W.K.* in support of this proposition was the Uniform Marriage and Divorce Act § 316(c), 9A U.L.A. 102 (Master ed. 1998). That sections states, "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child"; and the comment to § 316(c) further notes that "this section terminates the obligation of a parent to support a child, only upon the child's emancipation." *Id.* at 103. The court in *L.W.K.* also quoted with favor this principle:

> " '[T]he fundamental difference between the marital and parental duty of parents is that after a divorce the relation of husband and wife is at an end, and all marital obligations not preserved by the decree are at an end, while the relation of parent and child continues unchanged, and *a father's obligation to support his offspring continues to exist unless cut off by the decree.' Allison* v. *Allison,* 188 Kan. 593, 597 (1961)" (emphasis added).[12]

*L.W.K.* v. *E.R.C.*, *supra* at 446 n.21.

---

[11]The court went on to observe that "[w]e are not free to add a further requirement, beyond what the Legislature has declared, that the father is responsible for the support of his child born out of wedlock, 'from [her] birth up to the age of eighteen,' G. L. c. 209C, § 1 [, inserted by St. 1986, c. 310, § 16]; but only until his death." *Id.* at 446. We do not view the court's observation as detracting from the court's previous determination that support continues until emancipation or further court order.

[12]We are aware of the statement in *L.W.K.* that the trial judge there "appropriately recognized that an order for postminority support for a young child would generally be premature." *L.W.K.* v. *E.R.C.*, *supra* at 452. We note, however, that the trial judge was dealing with the issue of future payment of postminority education costs and that the statement occurred in the context of a section of the opinion that concerned postminority educational support for children. The court noted in that same section that the statute places limitations on educational support awards by requiring that "a child seeking such

Thus, our courts have concluded that "[t]he Legislature did not intend that emancipation 'automatically occur on reaching the age of majority' in all circumstances." *Eccleston* v. *Bankosky*, 438 Mass. 428, 434 (2003), quoting from *Larson* v. *Larson*, 30 Mass. App. Ct. 418, 420 n.3 (1991). See *Turner* v. *McCune*, 4 Mass. App. Ct. 864, 865 (1976) (emancipation not automatic when child reaches age of majority). Contrast *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 14 (1980) (noting in dictum that statutory changes reducing age of majority to eighteen "establish[ed] an earlier age of emancipation"). See also *Conlon* v. *Sawin*, 420 Mass. 735, 737 (1995) ("Support obligations under G. L. c. 209C do not terminate in all instances when a child born out of wedlock attains majority").

The history of G. L. c. 208, § 28, further reflects that, despite the reduction in the age of majority from age twenty-one to eighteen that occurred "in response to the conscription of men eighteen years of age to serve in the Vietnam War," *Eccleston* v. *Bankosky*, 438 Mass. at 434 n.14,[13] the Legislature did not intend that emancipation occur, presumptively, at age eighteen. "[S]ince lowering the presumptive age of majority . . . the Legislature has acted repeatedly to clarify and reinforce its intent that a child's attaining eighteen years does not, of itself, terminate the support obligations of a noncustodial parent." *Id.* at 434-435. Within two years of lowering the age of majority, the Legislature amended § 28, to restore to the Probate and Family Court the authority to award maintenance for children between eighteen and twenty-one. See St. 1975, c. 661, § 1. A year later, the statute was again amended by inserting the words "support and education" in the sentence added by the prior amendment. See St. 1976, c. 279, § 1. "In enacting such statutes, the

support had to 'attain age eighteen' before doing so," *id.* at 453, but that "the statute . . . does not limit general support awards for children under the age of eighteen in the same way." *Ibid.* See *Doe* v. *Roe*, 32 Mass. App. Ct. 63, 64, 69-70 (1992) (where modification judgment entered when child was eight, increased child support, and added provision ordering father to pay costs of child's education beyond high school, we held that the latter "portion of the order was premature").

[13]Prior to 1974, when the Legislature reduced the age of majority from twenty-one to eighteen, "[t]wenty-one years was the established age at which . . . the common law duties of support and obedience ceased." *Orlandella* v. *Orlandella*, 370 Mass. 225, 227 (1976).

Commonwealth has recognized that merely attaining the age of eighteen years does not by itself endow young people with the ability to be self-sufficient in the adult world." *Eccleston* v. *Bankosky, supra* at 436. See *Orlandella* v. *Orlandella,* 370 Mass. 225, 227-230 (1976) (support decree ordering husband to pay weekly support for "minor child" entered before effective date of statutes reducing age of majority to eighteen "is not automatically modified by legislative redefinition of age of majority"). "The Legislature apparently intended that children meeting the requirements set forth in [G. L. c. 208,] § 28, continue to be considered 'minors' at least for purposes of support." *Stolk* v. *Stolk,* 31 Mass. App. Ct. 903, 904-905 (1991). See *Heider* v. *Heider,* 34 Mass. App. Ct. 634 (1993).[14] See also *Kelsey* v. *Panarelli,* 5 Mass. App. Ct. 480, 482-483 (1977) (Armstrong, J., concurring) (G. L. c. 208, § 28, and G. L. c. 209, § 37, "represent a reasonable legislative attempt to secure to dependent children of broken homes advantages customarily made available to children of other homes and comparable age. In families that remain together, decisions by parents whether to terminate support when their children reach the age of majority are usually tempered by consideration of the educational and economic realities of our time . . .").[15]

At oral argument, the father cited dictum in *Lombardi* v.

---

[14]In *Heider* v. *Heider, supra* at 636, we noted that the legal obligation to support had ceased in 1980, when the children were twenty-one and twenty-three, by reason of their majority, and quoting from *Larson* v. *Larson,* 30 Mass. App. Ct. at 425, we stated that "a Probate Court has no authority under G. L. c 208, § 28, to make support orders for a child over twenty-one."

[15]Although the argument might be made that the sentence added to G. L. c. 208, § 28 ("The court may make appropriate orders of maintenance, support and education of any child *who has attained age eighteen*" [emphasis added]), requires that the child has reached age eighteen before an order for general support may enter, we think this reading is inconsistent with the history of this provision, see discussion *supra,* as also manifested in the title of the amending legislation, see note 9, *supra,* and that such a reading is not supported by a similar provision in G. L. c. 209C, § 1, inserted by St. 1986, c. 310, § 16, which provides that "[e]very person is responsible for the support his child born out of wedlock from its birth up to the age of eighteen, or, where such child is domiciled in the home of a parent and principally dependent upon said parent for maintenance, to age twenty-one." See G. L. c. 209, § 32F (regarding married persons living apart and authorizing Boston Municipal Court and Probate and Family Court Departments in certain circumstances "to order a parent to support his dependent child"); G. L. c. 209D, § 1-101

*Lombardi*, 68 Mass. App. Ct. 407, 412 (2007) ("In the case of child support . . . responsibility [for support of a child] ceases with certain exceptions, when the child attains the age of majority"), as providing support for his position. We note, however, that the record in that case reflects that the judgment at issue provided for support of "minor children." See *id.* at 408 & 409 n.8. Further, that statement should not be read to suggest that support ceases automatically at age eighteen. Compare *L.W.K.* v. *E.R.C.*, 432 Mass. at 445 ("General Laws c. 209C, § 1, imposes child support responsibility on a parent from the child's birth to the age of eighteen, and beyond that period if certain statutory and readily discernible circumstances exist"). A probate judge does, of course, have the discretion to enter an order for child support for a child who is a minor at the time of the judgment that terminates when a child reaches age eighteen.[16] See, e.g., *Brogle* v. *Martin*, 20 Mass. App. Ct. 901 (1985); *Quinn* v. *Quinn*, 49 Mass. App. Ct. 144 (2000).

We think, based on the foregoing authorities, that (except in the case of educational support) the trial judge is not required to wait until a child nears the end of his or her minority to make an order for general support that continues until a child is emancipated (as defined by the statutory framework), by virtue of continued dependency on and domicile with a custodial parent. See, e.g., *Ross* v. *Ross*, 50 Mass. App. Ct. 77, 79 (2000); *Braun* v. *Braun*, 68 Mass. App. Ct. 846, 849 (2007). This is particularly so when it is apparent from the facts of the case that the parties anticipate that their children will be attending college and thus likely will not be emancipated when they reach the age of majority.

(ii) *Application to present appeal.* Although the child support order at issue does not refer to a specific termination date, it ap-

(defining "child" as "an individual, whether over or under the age of majority, . . . alleged to be owed a duty of support" and "child support order" as "a support order for a child, including a child who has attained the age of majority under the law of the issuing state").

[16] A judge might, for example, conclude that, based on the parties' circumstances at the time of entry of the order, it would be unlikely that the child would continue to be dependent or domiciled with the custodial parent once the child reached the age of eighteen and that placing on the custodial parent the burden of filing a modification complaint seeking continued support in such circumstances would be appropriate.

pears from other provisions in the divorce judgment that the judge did not assume the children would no longer require support upon reaching age eighteen. Indeed, as we also observed in *Tatar* v. *Schuker*, 31 Mass. App. Ct. 534, 535-536 (1991), provisions in the parties' divorce judgment are geared towards permitting the wife to maintain the marital home for the benefit of the children until their emancipation, and such provisions are "traditional child support provision[s]." *Id.* at 536, quoting from *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124, 128 (1989).[17]

In light of the fact that no issue had been raised whether the son remained principally dependent on his mother for support and domiciled in her home, it was appropriate for the probate judge to conclude that the father's obligation for child support continued. Had the father been unclear as to the basis for the first contempt judgment, he could have requested findings on that score. As it was, the judge's basis became apparent in the second judgment of contempt, ordering "child support for the children who are unemancipated according to the statute."[18]

---

[17]The father was incorrect in stating that the judge, who fashioned the initial divorce judgment, made no mention of emancipation. The divorce judgment ordered the father to convey the marital residence in Cambridge to the mother; the mother was ordered to pay the father $240,000 in satisfaction of any interest he might have in the home, with payment deferred until the sale of the home; the mother's remarriage; "or the emancipation of the children." *Tatar* v. *Shuker, supra* at 535. An order for six percent interest on the unpaid amount was also deferred until the occurrence of these contingencies. In addition, as noted in the divorce judgment the parents are academics and, as evidenced by their having established UGMA accounts, planned for eventual college attendance by their children. See note 1, *supra.*

[18]As we noted earlier in this opinion, the record reflects that the father belatedly raised as an issue of fact the mother's contribution to the children's "college expenses (either tuition or living)" in his rule 60(b) motion. See *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.,* 399 Mass. 886, 894 (1987) ("If the moving party fails to show why he did not have the evidence at the time of the original proceeding, the party will not prevail"). The first record reference to a possible question as to the son's dependency and domicil is in the father's motion for stay pending appeal, wherein he states that there are substantial questions as to, among other things, "the current principal residence of the children" and "the extent to which the children remain dependent on each of the parents." In support of the former, he refers to the son's 2004 and 2005 Virginia tax returns. In support of the latter, the father makes the general assertion that "[h]e alone provides the funds for the children's college education, spending money, trips to Europe, etc. and all of the other pursuits and activities which children

Cf. *Kennedy* v. *Kennedy,* 17 Mass. App. Ct. 308, 312 (1983) ("A Probate Court has power to modify a support order in the context of either a complaint for contempt or a complaint for modification"). See *Pemberton* v. *Pemberton,* 9 Mass. App. Ct. at 13; *Quinn* v. *Quinn,* 49 Mass. App. Ct. at 149. The mother was not required, in the circumstances presented, to initiate a separate complaint for modification in order to obtain a determination that the father's child support obligation continued after the son reached age eighteen. To decide otherwise would require a custodial parent to face unilateral termination of payments unless she obtains an order for continued support that is not even based on changed circumstances but on circumstances (dependency and domicil) that have not changed.

That said, we do not think the divorce judgment here was sufficiently clear as to the father's ongoing obligation to provide such support, and we encourage judges to specify in their judgments the contingencies terminating child support obligations. It was not until the first contempt judgment entered that the father

---

similarly situated pursue."

Even assuming that the judge had this evidence before her in deciding that the children were "unemancipated under the statute" (as we have observed, the father failed to include in the record transcripts of the contempt hearings), she need not have concluded on this evidence that the son changed his residence to that of his father and was no longer domiciled in the mother's home as he had been since the divorce. The judge also could consider the mother's expenses in connection with maintaining the marital home for the son when considering his dependency. That the children's college expenses were paid out of funds set aside for those expenses, as evidenced by provisions in the divorce judgment providing for custody of the fund and the parties' stipulation which the judge incorporated in a judgment, see note 4, *supra,* is not dispositive. See *Larson* v. *Larson,* 28 Mass. App. Ct. at 342-343 (where child determined to be principally dependent on mother, pursuant to G. L. c. 208, § 28, though father paid all of child's "expenses associated with [her] college education including her tuition, room and board and travel expenses," allowance and per diem when with her mother; mother's indirect contributions, including maintaining her home where child spent vacations, and "providing lodging, food, utilities, telephone, etc." supported finding of principal dependency on mother); *Stolk* v. *Stolk,* 31 Mass. App. Ct. at 905 (judge did not err in finding child principally dependent on recipient parent, even though child had attained age of majority and was enrolled in college). Compare *Kirwood* v. *Kirwood,* 27 Mass. App. Ct. 1156, 1156, 1157 (1989) (noting that "[i]n considering the statutory question, a judge should not limit inquiry solely to the direct financial contributions made by the parties" and upholding determination that son was principally dependent on father as properly "based on a consideration of all the evidence").

was clearly informed that his obligation continued.[19] We thus vacate the finding of contempt made in connection with the judgment of October 28, 2005.

b. *Credit for other payments.* The father alleges that shortly after he stopped paying child support, his son received $3,508 in Social Security benefits as a consequence of the father's age. In order to receive a credit based on such payments, the father was first required to seek and obtain a modification judgment. See *Rosenberg* v. *Merida*, 428 Mass. 182, 188 (1998) ("The non-custodial parent may apply the credit [for parent's disability benefits paid to unemancipated child] against a child support obligation only after seeking modification and receiving an appropriate modification judgment"). The father here seeks a retroactive adjustment, and we thus need not address whether an obligor parent may obtain prospective relief based on such payments in the context of a contempt action brought by the custodial parent. See *Quinn* v. *Quinn*, 49 Mass. App. Ct. at 147-148 ("G. L. c. 119A, § 13[*a*], no longer permits a judge to moot or reduce arrearages for child support except for any period during which there is pending a complaint for modification").

c. *Evidentiary hearing.* The judge did not err in denying the father's request for evidentiary hearings on the contempt matters. See *Mahoney* v. *Mahoney*, 65 Mass. App. Ct. 537, 540 (2006) (where material facts are not in dispute, "a judge may properly rule on a complaint for contempt without an evidentiary hear-

---

[19]We do not condone the father's use of self-help in terminating support. Had the divorce judgment here been clearer in providing that support would not end until the children were emancipated according to the statute, we would have upheld the finding of contempt, even if the father had timely raised the question whether the younger child remained domiciled with the mother and principally dependent on her for his support. As set forth in *Heistand* v. *Heistand*, 384 Mass. 20, 29-30 (1981), where the court upheld a finding of contempt even though "the defendant was correct on the merits of his argument[,] . . . [because] he inappropriately resorted to self-help, unilaterally reducing the support payments and thereby flouting a valid order of the court. The defendant's recourse upon the plaintiff's refusal to pay her share should be to petition the Probate Court for a declaration" regarding a contested issue. An obligor who is unclear about the extent of his or her obligation but does not seek clarification, runs the risk of being found in contempt and responsible for attorney's fees and interest on any unpaid amounts. See G. L. c. 215, § 34A(*a*).

ing, or without receiving live testimony"). The father has identi-
fied no disputed issue of material fact that was timely raised.[20]
Cf. *Rodriquez* v. *Furtado*, 410 Mass. 878, 880 n.3 (1991) (sum-
mary judgment appropriate where only facts in dispute are not
material to disposition). "The information before the judge was
clearly sufficient to warrant findings that the father had the
present ability to pay the sums due in full, . . . that his continued
refusal to do so was contumacious . . . , and that no material
change in circumstances had occurred which would justify any
change in the original . . . order. . . . [T]he [father] had an
adequate opportunity to present his position on all the material
issues raised in both complaints" for contempt. *Newman* v.
*Newman*, 12 Mass. App. Ct. 874, 875-876 (1981).

d. *Attorney's fees.* An award of attorney's fees is authorized
by G. L. c. 215, § 34A(*a*), inserted by St. 1982, c. 282, which
provides in relevant part:

> "In entering a judgment of contempt for failure to comply
> with an order or judgment for monetary payment, there
> shall be a presumption that the plaintiff is entitled to receive
> from the defendant . . . all of his reasonable attorney's
> fees and expenses relating to the attempted resolution,
> initiation and prosecution of the complaint for contempt."

There was no abuse of discretion in the award of fees made

---

[20]The father's answer to the first complaint denied only the allegation that
he failed to provide quarterly reports as to the children's custodial accounts.
His unsupported claim that, by alluding to issues of fact in his motion for
relief from the first judgment of contempt, he preserved the issue for appeal
"does not present an appellate argument within the meaning of Mass.
R.A.P. 16(a)(4), [as amended,] 367 Mass. 921 (1975), and brings nothing
before us for consideration." *Stokosa* v. *Waltuch*, 6 Mass. App. Ct. 975, 975,
*S.C.*, 378 Mass. 617 (1979), citing *Lolos* v. *Berlin*, 338 Mass. 10, 13-14
(1958). See note 18, *supra.*

In his answer to the second complaint, denials were not pertinent to the is-
sue of support which was the basis for the judge's finding of contempt.

The father asserts that in answering the third complaint for contempt, he
"denied most of the factual allegations," including whether he had paid support
since the entry of the last contempt judgment. At the hearing on this complaint,
the father had the opportunity to present evidence on his behalf. Based on
representations of his counsel at the hearing, the father's position that he met his
support obligations was based entirely on the premise that the support obliga-
tion automatically expired on the younger child's eighteenth birthday.

in connection with the second and third contempt judgments. Nor did the probate judge abuse her discretion in determining the amount of the attorney's fee award. "What constitutes a reasonable fee is a question that is committed to the sound discretion of the judge." *Berman* v. *Linnane*, 434 Mass. 301, 302-303 (2001). That amount should "reflect[] consideration of the conservative principles appropriate to an award of fees in these circumstances." *Aroesty* v. *Cohen*, 62 Mass. App. Ct. 215, 222 (2004). The affidavit of the mother's counsel itemized fees and attested to the lead attorney's experience and market value for his services. In light of this, the probate judge was justified in accepting the validity of the fees as recounted in the affidavit of mother's counsel.[21] See *Stratos* v. *Department of Pub. Welfare*, 387 Mass. 312, 323-325 & n.12 (1982) ("Calculation of reasonable hourly rates should begin with the average rates in the attorney's community for similar work by attorneys of the same years' experience"); *Crane* v. *Commissioner of Pub. Welfare*, 400 Mass. 46, 48, 50-51 (1987); *Silverman* v. *Spiro*, 438 Mass. 725, 730-731 (2003).

The father maintains that, had he been granted an evidentiary hearing in connection with the third contempt complaint, he would there have contested the "validity" of the fees sought by the mother. The father did not, however, request an evidentiary hearing on the issue of the reasonableness of fees. See *J.P. Constr. Co.* v. *Stateside Builders, Inc.*, 45 Mass. App. Ct. 920, 920-921 (1998) (evidentiary hearing on reasonableness of attorney's fees required only if specifically and timely requested).

e. *Recusal.* "Generally, recusal is a matter left to the discretion of the judge." *Commonwealth* v. *Adkinson*, 442 Mass. 410, 415 (2004). "To show that a judge abused [her] discretion by failing to recuse [herself], a defendant ordinarily must show that the judge demonstrated a bias or prejudice arising from an extrajudicial source, and not from something learned from participation in the case." *Ibid.* "The fact that a judge entered an order

---

[21]The father points out that the itemized fees in the affidavit of mother's counsel total only $4,302.50. The judge did not abuse her discretion in crediting the mother's counsel's estimate of fees accrued but not yet calculated. "It is not the law that a request for [attorney's] fees must be entirely denied when a fee applicant does not submit contemporaneous time records to the court." *Handy* v. *Penal Institutions Commr. of Boston*, 412 Mass. 759, 767 (1992).

whose violation is claimed is not alone a ground for the judge to recuse [herself]." *Furtado* v. *Furtado*, 380 Mass. 137, 152 (1980). The father makes no allegation of any specific act by the judge that could denote partiality; recusal was not mandatory in this case.

*Conclusion.* We affirm so much of the judgment dated October 29, 2005, that establishes support arrears in the amount of $14,681, and vacate the finding of contempt. We affirm the judgments dated March 10, 2006, and July 14, 2007.

*So ordered.*